T.C. Summary Opinion 2016-41

UNITED STATES TAX COURT

MANDIE BRADFORD GASTON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10987-14S.                    Filed August 15, 2016.

Mandie Bradford Gaston, pro se.

Lewis A. Booth, II, for respondent.

SUMMARY OPINION

PARIS, <u>Judge</u>:  This case was heard pursuant to the provisions of section

7463 of the Internal Revenue Code in effect when the petition was filed.[1]

---

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect for the years at issue, and all Rule references are to the
Tax Court Rules of Practice and Procedure.

Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In a notice of deficiency dated May 9, 2013, respondent determined income tax deficiencies of $2,127 and $17,481 and accuracy-related penalties under section 6662(a) of $425.40 and $3,496.20 for petitioner's 2009 and 2010 taxable years, respectively.

After concessions,[2] the issues for decision are whether petitioner is: (1) entitled to car and truck expense deductions for 2009 and 2010 for her notary business in excess of the amounts respondent allowed; (2) entitled to a supplies expense deduction for 2009 for her notary business in excess of the amount respondent allowed; (3) entitled to an interest expense deduction for 2009 for her notary business in excess of the amount respondent allowed; (4) entitled to a wage expense deduction for 2010 for her notary business for a payment she allegedly made to a contractor who was also her brother; (5) entitled to a legal and

---

[2]Respondent also determined that petitioner was liable for tax on $70 in unreported capital gain. Petitioner did not file a pretrial memorandum addressing this issue, and the issue was not discussed during trial. In her answering brief petitioner attached an account statement from Charles Schwab & Co., Inc., that showed a sale transaction for which she received $70. The account statement did not, however, reflect petitioner's basis. Because petitioner offered insufficient evidence to determine the total amount of capital gain reflected in the sale, the Court deems this issue conceded.

professional fees deduction for 2010 for her notary business in excess of the amount respondent allowed; (6) entitled to a repairs expense deduction for 2010 for alleged repairs she made to an investment property; (7) entitled to a noncash charitable contribution deduction for 2010 for donations she allegedly made to Goodwill Industries International, Inc. (Goodwill); and (8) liable for accuracy-related penalties for 2009 and 2010.

## Background

Some of the facts are stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioner lived in Texas when the petition was timely filed.

The primary issues in this case relate to respondent's disallowing petitioner's claimed deductions for three categories: (1) expenses for a notary business reported on Schedules C, Profit or Loss From Business; (2) expenses for an investment property reported on Schedule E, Supplemental Income and Loss; and (3) noncash charitable contributions reported on Schedule A, Itemized Deductions.

## I.  Petitioner's Notary Business

In 2009 and 2010 petitioner operated a mobile notary business through which she printed out loan documents, traveled to meet with borrowers who were

refinancing mortgages on their homes, and witnessed borrowers' signatures on their loan documents. Petitioner reported income and expenses associated with the notary business on Schedules C attached to her 2009 and 2010 Federal income tax returns.

Petitioner reconstructed travel logs for 2009 and 2010, which included the dates on which she traveled to witness borrowers' signatures on their loan documents, the borrowers' names and addresses, and the number of miles she drove. She reported car and truck expenses for 34,767 and 85,000 business miles for 2009 and 2010, respectively, but her travel logs and supporting documentation do not support those figures. For some days she claimed to have scheduled closing meetings only an hour apart but was somehow able to attend the first meeting, adequately perform her responsibilities in 15 to 20 minutes, drive to the next meeting--sometimes more than 60 miles--and arrive in a timely manner. The Court did not find petitioner's testimony with respect to her travels credible.[3]

---

[3]It appears to the Court that petitioner calculated all of her business miles as if she had traveled round trip from her home to the borrower's location. However, her testimony contradicts her calculation method--she testified that she would travel from her house to meet a borrower at one location, then travel from there to the next borrower's location. The Court spent extensive time reviewing petitioner's voluminous mileage records. It appears that respondent also reviewed the same logs before allowing the mileage expense deduction reflected in the notice of deficiency.

Petitioner purchased supplies such as pens, pencils, printers, and toner for the operation of her notary business. She claimed a supplies expense deduction of $7,741 for 2009 and entered into evidence receipts from stores and suppliers such as Office Depot, Inc., and Dell, Inc., from which she had purchased supplies. However, she also duplicated many of those expenses by claiming deductions for additional supplies expenses as Schedule C "other expenses" and did not provide documentation to support the full amounts of her claimed deductions.

Petitioner claimed an interest expense deduction of $9,482 for 2009. She entered bank statements into evidence to demonstrate that she had paid $3,327.85 of interest in 2009 on a loan for her notary business. Petitioner did not provide the Court with any additional documentation to support the remainder of her claimed interest expense deduction, and she testified that $3,500 of her claimed 2009 interest expense deduction represented interest that she had paid in 2008.

Petitioner claimed a $25,000 wage expense deduction for 2010. She testified that she paid the entire $25,000 to her brother for repairs he had made to her investment property, a matter unrelated to her notary business. Petitioner was unable to provide documentation showing that she had actually paid her brother $25,000.

Petitioner also claimed a legal expense deduction of $10,070 for 2010. She testified that she had incurred $3,244 of those expenses for a matter unrelated to her notary business.

## II.    Petitioner's Investment Property

Petitioner maintained an investment property, which she never held out for rent. Petitioner claimed a repairs expense deduction of $20,852 on a Schedule E attached to her 2010 Federal income tax return. When asked specifically what her repairs expenses were for, petitioner stated: "Holes in walls were closed, bricks were replaced on the outside of the house, doors were replaced, cabinets were replaced because there were no doors on those, bathroom tubs, toilets." She introduced into evidence receipts from home improvement stores such as Lowe's Cos., Inc., and The Home Depot. She also introduced into evidence several invoices accompanied by cashier's checks for the amounts listed on the invoices. The invoices describe the work each contractor had performed, including: installing cabinets, building a master closet, installing new doors, installing attic access doors, remodeling and painting bathrooms, and remodeling the kitchen.

Petitioner did not provide any testimony regarding the condition of her investment property before she had incurred the reported repairs expenses. Rather than providing a full explanation and detailing specifically what she had spent

$20,852 on, she stated: "I mean, I can't go down all the list. You have the receipts that told you the things that I purchased." Many of the receipts are illegible, however, and those receipts and invoices that are legible lack context because of petitioner's scant testimony.[4] The nature of the legible documentation petitioner provided to the Court indicates that she incurred expenses to improve the investment property and ultimately sell it.

III. Petitioner's Noncash Charitable Contributions

Petitioner claims that she made two noncash charitable contributions to Goodwill in 2010. She introduced into evidence two donation receipts, one dated October 15, 2010, and the other dated December 3, 2010. Both donation receipts include the signature of the Goodwill employee who purportedly received petitioner's donations, but neither receipt lists or describes the property petitioner allegedly donated. On the Form 8283, Noncash Charitable Contributions, attached to her 2010 Federal income tax return she described the property donated as "household items". Petitioner claimed to have made a list of the items she donated, but she did not introduce the list into evidence or provide the list to respondent. When asked at trial whether she had a current recollection of the

---

[4]In addition, several invoices give petitioner's home address as the customer address, while other invoices give her investment property address as the customer address.

items included on the list, she stated: "There was a stove, there was an old refrigerator, there were things out of the investment property that I got rid of that was basically sitting outside." Petitioner claims that the fair market values of the property donated on October 15 and December 3, 2010, totaled $3,869 and $3,246, respectively. She did not provide an appraisal for the items she allegedly donated or provide any other documentation or testimony with respect to how she arrived at those fair market value figures. She did not testify as to the condition of the household items she allegedly donated or provide any documentation that would reflect their condition at the time of donation.

IV.    Petitioner's Fictitious Property Management Business

Petitioner timely filed her 2009 and 2010 Federal income tax returns. On August 24, 2011, petitioner submitted a Form 1040X, Amended U.S. Individual Income Tax Return, for 2010 with an attached Schedule C for a property management business not included with her initial 2010 return. On that Schedule C petitioner reported gross income of $10,903 and total expenses of $27,944. At trial petitioner admitted that the property management business was fictitious.

V.    Procedural History

On December 30, 2012, petitioner filed a bankruptcy petition with the U.S. Bankruptcy Court for the Southern District of Texas under 11 U.S.C. chapter 13.

On May 9, 2013, respondent issued to petitioner a notice of deficiency. Petitioner petitioned the Court for redetermination on June 26, 2013, but this Court dismissed her case for lack of jurisdiction because her petition was filed in violation of the automatic stay provisions of 11 U.S.C. sec. 362(a)(8) (2012). The Bankruptcy Court entered an order of dismissal on December 17, 2013.

On May 15, 2014, petitioner again petitioned this Court for redetermination of the deficiencies. With respect to 2010, the notice of deficiency was based on petitioner's amended return for 2010.

## Discussion

### I. Jurisdiction

The jurisdiction of this Court is governed by statute. Sec. 7442. A timely filed petition and a valid notice of deficiency are essential to the Court's jurisdiction. Secs. 6212 and 6213; Rule 13(a), (c); Monge v. Commissioner, 93 T.C. 22, 27 (1989); Abeles v. Commissioner, 91 T.C. 1019, 1025 (1988).

#### A. Timely Filed Petition

Generally, a taxpayer has 90 days after the mailing of a notice of deficiency to file a petition with this Court. Sec. 6213(a). However, if the taxpayer is involved in bankruptcy proceedings, the taxpayer is prohibited from filing a petition with this Court while the bankruptcy case is pending. 11 U.S.C. sec.

362(a)(8). Under section 6213(f), the 90-day period is suspended for the time during which the taxpayer is prohibited by reason of the bankruptcy proceedings from filing a petition and for 60 days thereafter. See Olson v. Commissioner, 86 T.C. 1314, 1319 (1986). Although this Court's jurisdiction is limited by 11 U.S.C. sec. 362(a)(8), the Commissioner is not prohibited from issuing a notice of deficiency during the pendency of a bankruptcy case. 11 U.S.C. sec. 362(b)(9)(B) (2012); see Zimmerman v. Commissioner, 105 T.C. 220, 224-225 (1995).

On December 30, 2012, petitioner filed a petition for bankruptcy. The notice of deficiency was issued on May 9, 2013. The Bankruptcy Court entered an order of dismissal on December 17, 2013. Because the notice of deficiency was issued during the pendency of the bankruptcy proceeding, petitioner had 150 days from December 17, 2013, to file her petition with this Court. She filed her petition with this Court on May 15, 2014, which was 149 days after the dismissal of her bankruptcy case. Accordingly, her petition was timely filed.

B.    Statute of Limitations on Assessment

The issuance of a valid notice of deficiency is an essential prerequisite to the jurisdiction of this Court in a deficiency action. Rule 13(a); Laing v. United States, 423 U.S. 161, 165 n.4 (1976). For a notice of deficiency to be valid, it must be sent to the taxpayer before the period of limitations for assessment has

expired.  See sec. 6213(a).  Section 6501(a) provides that the Commissioner must assess any income tax within the three-year period after a taxpayer files his return unless certain exceptions apply.  In a case under title 11 of the United States Code, the running of the period of limitations on the making of assessments is suspended for the period during which the Secretary is prohibited by reason of that case and for 60 days thereafter.  Sec. 6503(h)(1).

Generally, taxpayers are required to file their income tax returns by the 15th day of April following the close of the calendar year.  See sec. 6702(a).  However, when April 15 falls on a legal holiday in the District of Columbia, taxpayers can file their income tax returns by the next succeeding day which is not a Saturday, Sunday, or legal holiday in the District of Columbia.  Sec. 7503.

Petitioner timely filed her 2009 and 2010 Federal income tax returns.  For purposes of section 6501, those returns were considered filed on the last day prescribed by law for the filing thereof.  See sec. 6501(b)(1); sec. 301.6501(b)-1, Proced. & Admin. Regs.  Petitioner is deemed to have filed her 2009 Federal income tax return on April 15, 2010, and her 2010 Federal income tax return on April 18, 2011.[5]  See sec. 6501(b)(1); sec. 301.6501(b)-1, Proced. & Admin. Regs.

_____

[5]April 15, 2011, was Emancipation Day, a legal holiday in the District of Columbia.  The next succeeding day that was not a Saturday, Sunday, or legal

(continued...)

Thus, under sections 6213 and 6501(a), the general rule provides that the Commissioner had until April 15, 2013, and April 18, 2014, to assess petitioner's Federal income tax for 2009 and 2010, respectively.[6]  However, on December 30, 2012, petitioner filed a petition for bankruptcy with the U.S. Bankruptcy Court for the Southern District of Texas under 11 U.S.C. chapter 13.  The Bankruptcy Court entered an order of dismissal on December 17, 2013.  The running of the limitations period on assessment was suspended for the pendency of the bankruptcy proceeding and for 60 days thereafter.  See sec. 6503(h)(1).  The notice of deficiency was issued on May 9, 2013.  Accordingly, the period of limitations on assessment had not run, and the notice of deficiency was valid.

II.    Deficiency Liability

Generally, the Commissioner's determinations set forth in a notice of deficiency are presumed correct, and the taxpayer bears the burden of showing the determinations are in error.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115

---

[5](...continued)
holiday in the District of Columbia was April 18, 2011.

[6]Although petitioner amended her 2010 Federal income tax return on August 24, 2011, her amended return did not extend the period of limitations on assessment.  See Badaracco v. Commissioner, 464 U.S. 386, 393 n.8 (1984) ("It thus has been held consistently that the filing of an amended return in a nonfraudulent situation does not serve to extend the period within which the Commissioner may assess a deficiency.").

(1933). Deductions and credits are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any deduction or credit claimed on a return. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

Under certain circumstances the burden of proof as to factual matters may shift to the Commissioner pursuant to section 7491(a). The record does not establish that the prerequisites for a burden shift have been met. Therefore, the burden of proof remains petitioner's.

A.    Schedule C Notary Business Expenses

1.    Sections 162 and 274 Generally

Section 162(a) allows as a deduction all ordinary and necessary expenses paid or incurred in carrying on any activity that constitutes a trade or business. To be "ordinary" the transaction that gives rise to the expense must be of a common or frequent occurrence in the type of business involved. Deputy v. du Pont, 308 U.S. 488, 495 (1940). To be "necessary" an expense must be "appropriate and helpful" to the taxpayer's business. Welch v. Helvering, 290 U.S. at 113. Additionally, to be allowed as a deduction under section 162, the expenditure must be "directly connected with or pertaining to the taxpayer's trade or business". Sec. 1.162-1(a), Income Tax Regs.

Generally, a taxpayer must keep records sufficient to establish the amounts of income, deductions, credits, and other items reported on his or her Federal income tax return. Sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs. In the case of expenses not covered by section 274(d), the Court may estimate the amounts of allowable deductions when there is evidence that the taxpayer incurred deductible expenses. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). To do so, however, the Court must have some basis on which to make an estimate. Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

Section 274 imposes heightened substantiation requirements for the deduction of specified expenses. To deduct certain expenses, including expenses related to travel, meals, gifts, or listed property, the taxpayer must "substantiate[ ] by adequate records or by sufficient evidence corroborating the taxpayer's own statement": (1) the amount of the expense (e.g., mileage allowance); (2) the time and place of the expense; and (3) the business purpose of the expense. Sec. 274(d). Listed property includes passenger automobiles. Sec. 280F(d)(4)(A)(i). To satisfy the requirements of section 274(d) by adequate records, a taxpayer must maintain records and documentary evidence that in combination are sufficient to establish each element of an expenditure or use. Sec. 1.274-5T(c)(1) and (2), Temporary Income Tax Regs., 50 Fed. Reg. 46016-46017 (Nov. 6, 1985). The

<u>Cohan</u> rule allowing estimating is not applicable to expenses subject to section 274(d). <u>See</u> <u>Sanford v. Commissioner</u>, 50 T.C. 823, 827-828 (1968), <u>aff'd per curiam</u>, 412 F.2d 201 (2d Cir. 1969).

### 2. Petitioner's 2009 and 2010 Car and Truck Expenses

Petitioner reported car and truck expenses based on 34,767 and 85,000 business miles on the Schedules C attached to her 2009 and 2010 Federal income tax returns, respectively. Those expenses are subject to the substantiation requirements imposed by section 274(d). Respondent allowed car and truck expense deductions for 32,421 business miles for 2009 and 28,503 business miles for 2010. Petitioner was unable to substantiate that she traveled more miles than respondent determined. Accordingly, respondent's determination will be sustained.

### 3. Petitioner's 2009 Supplies Expenses

Petitioner claimed a supplies expense deduction of $7,741 on the Schedule C attached to her 2009 Federal income tax return; respondent allowed $1,633. Petitioner was unable to substantiate expenses in excess of the amounts that respondent allowed, and her testimony did not provide sufficient detail to permit the Court to estimate her supplies expenses. Accordingly, respondent's determination will be sustained.

### 4. Petitioner's 2009 Interest Expense

Petitioner claimed an interest expense deduction of $9,482 on the Schedule C attached to her 2009 Federal income tax return; respondent allowed $5,887. Petitioner was unable to substantiate deductions in excess of the amount that respondent allowed, and her testimony did not provide sufficient detail to permit the Court to estimate her interest expense. Accordingly, respondent's determination will be sustained.

### 5. Petitioner's 2010 Wage Expenses

Petitioner claimed a wage expense deduction of $25,000 on the Schedule C attached to her 2010 Federal income tax return. Respondent disallowed the claimed wage expense deduction on the basis that petitioner had paid $25,000 to her brother for work he had performed on her investment property.

With respect to the deductibility of salaries, section 162(a) requires not only that the expense be ordinary and necessary but also that the amount be reasonable "for personal services actually rendered" to the payer. Sec. 162(a)(1). When an amount deducted as wages involves a familial relationship, this Court closely scrutinizes the transaction to determine whether there is a bona fide employer-employee relationship and whether payments were made for services actually performed for the business. See Denman v. Commissioner, 48 T.C. 439, 450

(1967). Petitioner admitted that the $25,000 payment she deducted for wages was in fact a payment that she had made to her brother for work on her investment property, a matter unrelated to her notary business. Accordingly, the Court will sustain respondent's determination.[7]

### 6. Petitioner's 2010 Legal Expenses

Petitioner claimed a deduction for legal expenses of $10,070 on the Schedule C attached to her 2010 Federal income tax return. Respondent allowed $6,826 of petitioner's claimed legal expense deduction and disallowed the remaining $3,244 on the basis that she had incurred those expenses for a matter unrelated to her Schedule C business. Petitioner admitted that she had incurred the $3,244 of legal expenses for an unrelated matter. Accordingly, the Court will sustain respondent's determination.

### B. Investment Property

Section 212 allows a deduction for all the ordinary and necessary expenses paid or incurred for the production or collection of income and for the management, conservation, or maintenance of property held for the production of income. However, no current deduction is allowed for capital expenditures. See

---

[7]In addition, petitioner was unable to substantiate that she had actually paid $25,000 to her brother. Accordingly, petitioner is not entitled to deduct that amount elsewhere on her return.

sec. 263(a). Capital expenditures include amounts paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate. INDOPCO, Inc. v. Commissioner, 503 U.S. at 83; see sec. 263(a)(1).

The capitalization rules of section 263(a) and the regulations thereunder do not treat an expense to repair property as a capital expenditure. See Gibson & Assocs., Inc. v. Commissioner, 136 T.C. 195, 232 (2011). Such an expense is not a capital expenditure because it does not increase the value or prolong the useful life of the property (or adapt the property to a different or new use). Id. at 232-233. Whether an expense is for a repair is a factual determination that turns on a finding that the work did or did not prolong the life of the property, increase its value, or make it adaptable to a different use. Id.

Petitioner claimed a repairs expense deduction of $20,852 on a Schedule E attached to her 2010 Federal income tax return for alleged repairs she made to her investment property. Respondent disallowed all $20,852 on the basis that the expenses were for capital improvements made to her investment property and, accordingly, should have been capitalized.

Petitioner was unable to prove that her repairs expenses were in fact for repairs she made to her investment property. Although petitioner submitted into

evidence receipts from home improvement stores and invoices from various contractors, she did not provide the Court with sufficient testimony to establish that those expenditures were for repairs and not capital improvements. Rather than taking the opportunity to explain to the Court why her expenditures qualify as repairs, petitioner vaguely stated: "I mean, I can't go down all the list. You have the receipts that told you the things that I purchased." Many of those receipts and invoices, however, are illegible, and the legible invoices indicate that petitioner incurred expenses to improve her investment property and then sell it rather than to make repairs. The Court is not required to accept vague, uncorroborated, or self-serving testimony as reliable and true.[8] Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). The Court did not find petitioner's testimony to be credible, and the record is simply not sufficient to permit the Court to determine which expenses were for repairs, which may be deducted by a cash basis taxpayer when paid, see Schroeder v. Commissioner, T.C. Memo. 1996-336, 1996 WL 412011, at *4, and which were for capital improvements, which are added to the investment property's basis and recovered upon her sale of the property, see id. Because petitioner did not satisfy her burden, the Court will sustain respondent's determination.

_____

[8]See supra note 4.

C.     Noncash Charitable Contributions

Section 170(a)(1) allows a deduction for any charitable contribution made within the taxable year.  If a taxpayer makes a charitable contribution of property other than money, the amount of the contribution is generally equal to the fair market value of the property at the time of the contribution.  See sec. 1.170A-1(c)(1), Income Tax Regs.  Taxpayers must satisfy certain statutory and regulatory substantiation requirements, however, in order to deduct charitable contributions.  See sec. 170(a)(1); sec. 1.170A-13, Income Tax Regs.  The nature of the required substantiation depends on the value of the contribution and on whether it is a gift of cash or property other than cash (noncash).

Under section 1.170A-13(b)(1), Income Tax Regs., a taxpayer is required to maintain for each noncash contribution a receipt from the donee organization unless doing so is impractical.  The donee receipt must show:  (i) the name of the donee organization; (ii) the date and location of the contribution; and (iii) a description of the property in detail reasonably sufficient under the circumstances.  Id.

A taxpayer who lacks a donee receipt is required to keep reliable written records including, among other things:  (i) the name and address of the donee organization to which the contribution was made; (ii) the date and location of the

contribution; (iii) a description of the property in detail reasonable under the circumstances (including the value of the property); and (iv) the fair market value of the property at the time the contribution was made and the method used to determine the fair market value.  Id. subpara. (2)(ii); see also Van Dusen v. Commissioner, 136 T.C. 515, 532 (2011).

Petitioner claimed to have made two noncash charitable contributions to Goodwill:  (1) a $3,869 donation of household items on October 15, 2010, and (2) a $3,246 donation of household items on December 3, 2010.  Petitioner maintained a donation receipt from Goodwill for each of her alleged donations. The donation receipt included the name of the donee organization--Goodwill--and the date and location of the contribution but did not include any description whatsoever of the property donated.  Although petitioner claimed to have made a list of the property she donated, she neither introduced that list as evidence nor provided it to respondent; and she did not produce any other reliable written records.  Thus, petitioner failed to substantiate her claimed noncash charitable contribution deductions.[9]

---

[9]Because petitioner did not satisfy the baseline substantiation requirements imposed on all noncash charitable contributions, the Court does not need to address the additional substantiation requirements that are imposed on noncash charitable contributions of $250 or more, more than $500, or more than $5,000.

Further, no deduction is allowed for "any contribution of clothing or a household item" unless such property is "in good used condition or better." Sec. 170(f)(16)(A). For purposes of section 170, the term "household item" includes appliances. Sec. 170(f)(16)(D). The items petitioner allegedly donated were household items. The Form 8283 attached to her 2010 Federal income tax return described the property donated as "household items", and she testified that she donated appliances such as a stove and an old refrigerator. Petitioner failed to present credible evidence that those items were "in good used condition or better", and she did not furnish a qualified appraisal with her return. See sec. 170(f)(16)(C) (exception where "qualified appraisal" is supplied); Kunkel v. Commissioner, T.C. Memo. 2015-71, at *12. Although petitioner introduced two donation receipts into evidence, those receipts did not describe the property allegedly donated, nor did they mention its condition. Petitioner did not testify as to the condition of the household items she donated. She simply stated that she donated a "stove" and an "old refrigerator" that had previously been part of an investment property that had holes in walls, did not have doors on cabinets, and needed replacement bricks on the exterior. On the basis of the record, the Court is unable to conclude that the property petitioner allegedly donated was "in good

used condition or better." Thus, the Court will sustain respondent's determination with respect to petitioner's noncash charitable contribution deductions.

III.    Petitioner's Fictitious Property Management Business

With respect to petitioner's 2010 tax year, the notice of deficiency was based on her amended return. Petitioner attached a Schedule C for a property management business to her amended return that was not included with her initial 2010 return. On that Schedule C petitioner reported gross income of $10,903 and total expenses of $27,944. In his pretrial memorandum respondent asserted that the Schedule C for petitioner's alleged property management business was fictitious. The notice of deficiency, however, does not include adjustments that would reflect respondent's position, and respondent did not file a motion to amend his answer to assert this additional adjustment.

Rule 41(b)(1) provides: "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." The issue with respect to petitioner's fictitious property management business was tried by consent and is therefore treated as if it had been raised in the pleadings.[10] See id.; see also, e.g., Lilley v.

_____

[10]In some situations, the Court has held that failure to describe the basis for the tax deficiency in the notice of deficiency is analogous to the raising of a new

(continued...)

Commissioner, T.C. Memo. 1989-602, aff'd without published opinion, 925 F.2d 417 (3d Cir. 1991).  Petitioner admitted at trial that the property management business was fictitious.  Accordingly, the parties shall submit final computations to the Court as if petitioner did not report any information on the Schedule C for her property management business that was attached to her amended 2010 return.

IV.    Section 6662 Accuracy-Related Penalty

Section 6662(a) and (b)(1) authorizes a 20% penalty on the portion of an underpayment of income tax attributable to negligence or disregard of rules or regulations.  Under section 7491(c), the Commissioner bears the burden of production with regard to penalties.  Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  To meet that burden the Commissioner must come forward with evidence indicating that it is appropriate to impose the penalty.  Id.  Once the Commissioner

---

[10](...continued)
matter under Rule 142(a).  Shea v. Commissioner, 112 T.C. 183, 197 (1999); Wayne Bolt & Nut Co. v. Commissioner, 93 T.C. 500, 507 (1989); Estate of Ballantyne v. Commissioner, T.C. Memo. 2002-160, aff'd, 341 F.3d 802 (8th Cir. 2003).  In this regard, the Court has stated that a new matter is raised when the basis or theory upon which the Commissioner relies is not stated or described in the notice of deficiency and the new theory or basis requires the presentation of different evidence.  Wayne Bolt & Nut Co. v. Commissioner, 93 T.C. at 507.  In such a situation, the burden of proof is placed on the Commissioner with respect to that issue.  Id.
Even if the burden of proof is placed on respondent, he satisfied his burden, as petitioner admitted at trial that the property management business was fictitious.

has met the burden of production, the taxpayer has the burden of proving that the penalties are inappropriate because of, for example, reasonable cause or substantial authority. See Rule 142(a); Higbee v. Commissioner, 116 T.C. at 446-447.

For purposes of section 6662(a), "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code or to exercise ordinary and reasonable care in the preparation of a tax return. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. "Negligence" also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly. Sec. 1.6662-3(b)(1), Income Tax Regs. "Disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c); sec. 1.6662-3(b)(2), Income Tax Regs.

No penalty may be imposed under section 6662 with respect to any portion of an underpayment upon a showing that the taxpayer acted with reasonable cause and in good faith. Sec. 6664(c)(1); Higbee v. Commissioner, 116 T.C. at 448. "Reasonable cause" requires the taxpayer to demonstrate that he exercised ordinary business care and prudence as to the disputed item. United States v. Boyle, 469 U.S. 241, 246 (1985). The term "good faith" has no precise definition but means, among other things, (1) an honest belief and (2) the intent to perform

all lawful obligations.  Sampson v. Commissioner, T.C. Memo. 2013-212, at *18.

Whether a taxpayer acted with reasonable cause and in good faith is decided on a

case-by-case basis, taking into account all pertinent facts and circumstances.  See

Higbee v. Commissioner, 116 T.C. at 448; sec. 1.6664-4(b)(1), Income Tax Regs.

Generally, the most important factor is the extent of the taxpayer's effort to assess

his proper tax liability.  Sec. 1.6664-4(b)(1), Income Tax Regs.  Circumstances

that may indicate reasonable cause and good faith include an honest

misunderstanding of fact or law that is reasonable in light of all of the facts and

circumstances.  Higbee v. Commissioner, 116 T.C. at 449; sec. 1.6664-1(b)(1),

Income Tax Regs.

Respondent has met his burden.  Petitioner failed to make a reasonable

attempt to comply with the provisions of the Internal Revenue Code or to exercise

ordinary and reasonable care in the preparation of her tax returns.  Further,

respondent established that petitioner failed to keep books and records to

adequately substantiate her claimed deductions for both 2009 and 2010.

Petitioner has not met her burden of proving that she acted in good faith and

with reasonable cause.  Petitioner claimed to have documents to substantiate her

claimed deductions, but she did not provide them to either respondent or the

Court, and the documents petitioner did provide failed to substantiate any

additional deductions.  Accordingly, the Court will sustain the section 6662(a) accuracy-related penalties for 2009 and 2010.[11]

The Court has considered all of the arguments made by the parties, and to the extent they are not addressed herein, they are considered unnecessary, moot, irrelevant, or without merit.

To reflect the foregoing and the concessions of the parties,

<u>Decision will be entered</u>

<u>under Rule 155</u>.

---

[11]Respondent also alleged that petitioner was liable for the sec. 6662(a) accuracy-related penalty for 2010 for a substantial understatement of income tax. Because the Court finds that petitioner was negligent and did not act in good faith and with reasonable cause, the Court need not address whether she substantially understated her 2010 income tax.